(CONSTITUTIONAL LAW, and LAW OF NATIONS.)

The UNITED STATES v. FURLONG, *alias* HOBSON.
The UNITED STATES v. The SAME.
The UNITED STATES v. The SAME.
The UNITED STATES v. The SAME.
The UNITED STATES v. GRIFFEN and BRAILSFORD.
The UNITED STATES v. BOWERS and MATHEWS.
THE UNITED STATES v. The SAME.

The 8th section of the act of the 30th of April, 1790, c. 36. for the
punishment of certain crimes against the United States, is not
repealed by the act of the 3d March, 1819, c. 76. to protect the
commerce of the United States, and punish the crime of piracy.

In an indictment for a piratical murder, (under the act of the 30th
of April, 1790,) c. 36. s. 8. it is not necessary that it should
allege the prisoner to be a citizen of the United States, nor that the
crime was committed on board a vessel belonging to citizens of the
United States; but it is sufficient to charge it as committed from on
board such a vessel, by a mariner sailing on board such a vessel.

A citizen of the United States, fitting out a vessel in a port of the
United States, in order to cruise against a power in amity with the
United States, is not protected, by a commission from a belligerent,
from punishment for any offence committed *against vessels of the
United States.*

It is competent, in an indictment for piracy, for the jury to find, that a
vessel within a marine league of the shore, at anchor, in an open
road stead, where vessels only ride under shelter of the land at a
season when the course of the winds is invariable, is upon *the high
seas.*

The words " out of the jurisdiction of any particular *State;*" in the act
of the 30th April, 1790, c. 36. s. 8. must be construed to mean out
of the jurisdiction of any particular State *of the Union.*

The act of the 3d of March, 1819, c. 76. s. 5. furnishes a sufficient
definition of piracy; and it is defined to be *robbery on the seas.*

A vessel loses her national character by assuming a piratical character; and a piracy committed by a foreigner, from on board such a vessel, upon any other vessel whatever, is punishable under the 8th section of the act of the 30th of April, 1790, c. 36.

On an indictment for piracy, the jury may find the national character of a vessel upon such evidence as will satisfy their minds, without the certificate of registry, or other documentary evidence, being produced, and without proof of their having been seen on board.

On an indictment for piracy, the national character of a merchant vessel of the United States may be proved without evidence of her certificate of registry.

Each count in an indictment is a substantive charge; and if the finding of the jury conform to any one of the counts, which, in itself, will support the verdict, it is sufficient, and judgment may be given thereon.

1820.

U. States
v.
Pirates.

THESE were several indictments in the Circuit Court of Georgia and South Carolina. The following are the cases as stated for the decision of this Court:

The UNITED STATES v. JOHN FURLONG, *alias* HOBSON.

THE prisoner was indicted before the Circuit Court of Georgia, for the piratical murder of Thomás Sunley, on the act of Congress of the 30th April, 1790, c. 36. Verdict, guilty. The offence was committed on a vessel and crew, all English. The person murdered was an English subject. The piratical vessel was a vessel of the United States, and run away with by the captain and crew. The prisoner is an Irishman, and a subject of the king of Great Britain. It was moved by the prisoner's counsel, that the judgment be arrested on the following grounds, viz.:

1st. Because the indictment does not charge the prisoner as a citizen of the United States.

2d. Because the indictment does not charge the act, as committed on board of an American vessel, but charges it as committed on board of a foreign vessel, or vessel of owners unknown.

3d. Because the 8th section of the act of 30th April, 1790, c. 36. is virtually repealed by the act of 3d March, 1819, c. 76. to protect the commerce of the United States, and punish the crime of piracy.

Upon which grounds, the judges being divided in opinion, at the request of the counsel for the prisoner, it was ordered, that the indictment and proceedings thereon, together with the grounds of the defendant's motion in arrest of judgment, be transcribed by the clerk of the Circuit Court, and certified by him, under the seal of the court, and sent to this Court, for their decision.

## The UNITED STATES v. JOHN FURLONG, *alias* HOBSON.

THIS was another indictment against the same prisoner, before the same Court, on the act of Congress, of the 30th of April, 1790, c. 36. for the piratical murder of David May. Verdict, guilty. The same statement appears in the record, as in the case of the indictment of Furlong, for the murder of Thomas Sunley.

The UNITED STATES v. JOHN FURLONG, *alias* HOBSON.

THIS was another indictment against the same prisoner, before the same Court, on the act of the 3d of March, 1819, c. 76. for the piratical seizure of an unknown vessel. Verdict, guilty. The offence was committed on a foreign vessel, by a foreigner, from a vessel of the United States, which had been run away with by the captain and crew. It was moved by the prisoner's counsel, that the judgment be arrested on the ground that, as the constitution of the United States gives the power to Congress, to define and punish the crime of piracy, it is necessary that Congress define before it can punish, and that a reference to the law of nations is not such a definition as the constitution requires. Upon which ground, the Judges being divided in opinion, upon request of counsel for prisoner, it was ordered, that the indictment and proceedings thereon, together with the ground of the defendant's motion in arrest of judgment, be transcribed by the clerk of the Circuit Court, and certified by him, under the seal of the Court, and sent to this Court for their decision.

The UNITED STATES v. JOHN FURLONG, *alias* HOBSON.

THIS was another indictment against the same prisoner, before the same Court, on the act of the 30th

of April, 1790, c. 36. for a piratical robbery, committed on an American ship. Verdict, guilty. The offence was committed on a vessel of the United States, from a vessel of the United States, which had been run away with by the captain and crew. The prisoner is an English subject. It was moved by the prisoner's counsel, that the judgment be arrested, on the ground, that the 4th section of the act of 30th of April, 1790, c. 36. on which the indictment is founded, is virtually repealed by the act of the 3d of March, 1819, c. 76. entitled, " an act to protect the commerce of the United States, and punish the crime of piracy." Upon which ground the Judges being divided in opinion, upon the request of the counsel for the prisoner, it was ordered, that the indictment and proceedings thereon, together with the grounds of the defendant's *motion in arrest of judgment*, be transcribed by the clerk of the Circuit Court, and certified by him, under the seal of the Court, and sent to this Court for their decision.

## The UNITED STATES v. BENJAMIN BRAILSFORD and JAMES GRIFFEN.

THE prisoners were indicted before the Circuit Court of South Carolina, for piracy on an American ship, under the act of Congress of the 30th of April, 1790, c. 36. The Court divided on the following questions:

1st. Whether an American citizen, fitting out a vessel in an American port, really to cruize against a power at peace with the United States, is protected by a commission from a belligerent from punishment

for any offence committed by him against vessels of the United States.

2d. Whether it is competent for a jury to find, that a vessel within a marine league of the shore, at anchor in an open roadstead, where vessels only ride under shelter of the land at a season when the course of the winds is invariable, is upon the high seas.

3d. Whether the words, out of the jurisdiction of any particular State, in the 8th section of the act of Congress, of the 30th of April, 1790, c. 36. entitled, an act for the punishment of certain crimes against the United States, must be construed to mean, out of the jurisdiction of any particular State of the United States.

4th. Whether the said 8th section of the said act is virtually repealed by the 5th section of the act of Congress, of March 3d, 1819, c. 76.

5th. Whether the said 5th section of the said act of March 3d, 1819, c. 76. furnishes any, and what definition of the crime of piracy.

The UNITED STATES v. DAVID BOWERS and HENRY MATHEWS.

THE prisoners were indicted before the Circuit Court of Georgia, under the act of 30th of April, 1790, c. 36. for a piratical robbery committed on an American ship. Verdict, guilty. The prisoners were part of the crew of the Louisa privateer, who rose upon their officers in October, 1818, and putting them out of the ship, proceeded on a piratical cruize. The Louisa was commissioned by the republic of

Buenos Ayres, and commanded by Captain Almeida. There is no proof of her being American owned. The prisoners are American citizens, and the piracy for which they are convicted, was committed on the ship Asia, bearing the American flag. The captain asserted himself and vessel to be American; and on her stern was painted "New-York." The ship Asia, at the time of the robbery, was at anchor in an open roadstead, at the Island of Bonavista. The register of the ship Asia was not produced in evidence. Verdict, guilty.

The prisoner's counsel moved that the judgment be arrested on the following grounds, viz.

1st. That it is not competent to prove the national character of an American vessel, without evidence of her register.

2d. It is not competent for the jury to find that the piracy was committed on the high seas, when the evidence ascertained the Asia, at the time she was boarded, to have been at anchor in an open roadstead, at the island of Bonavista.

3d. That the prisoners are not punishable under the 8th section of the act of 30th of April, 1790, c. 36. entitled, "An act for the punishment of certain crimes against the United States;" the same having been virtually repealed by the act of 1819, c. 76. to protect the commerce of the United States, and to punish the crime of piracy.

4th. That there are two counts in the indictment, the first charging the offence to have been committed on the high seas, out of the jurisdiction of any particular State; the second, charging the offence to

have been committed in a certain haven, near the island of Bonavista, out of the jurisdiction of any particular State, and that it is not competent for a jury to find a general verdict of guilty on both counts.

Upon which grounds, the Judges being divided in opinion, it was ordered, that the indictment and proceedings thereon, together with the grounds of the motion in arrest of judgment, be transcribed by the clerk of the Circuit Court, and certified by him, under the seal of the Court, and sent to this Court for their decision.

### The UNITED STATES v. DAVID BOWERS and HENRY MATHEWS.

THE prisoners were indicted before the Circuit Court of Georgia, under the act of the 30th of April, 1790, c. 36. for a piratical robbery committed on a ship, the property of British subjects, and called the Sir Thomas Hardy, upon the high seas. The prisoners were citizens of the United States, and part of the crew of the Louisa privateer, mentioned in the preceding case. The prisoners were found guilty, and their counsel moved that the judgment be arrested upon the following grounds, viz. :

1st. That the act of the 30th of April, 1790, c. 36. eighth section, does not extend to piracy committed by the crew of a foreign vessel on a vessel exclusively owned by persons not citizens of the United States.

2d. That the eighth section of the act of the 30th

1820.

U. States
v.
Pirates.

of April, 1790, c. 36. entitled, "an act for the punishment of certain crimes against the United States," has been virtually repealed by the act of the 3d of March, 1819, c. 76. entitled, "an act to protect the commerce of the United States, and to punish the crime of piracy."

Upon which grounds, the Judges being divided in opinion, it was ordered, that the indictment and proceedings thereon, together with the grounds of the motion in arrest of judgment, be transcribed by the clerk of the Circuit Court, and certified by him, under the seal of the Court, and sent to this Court for their decision.

*Feb. 21st.*

These causes were argued by the *Attorney General* for the United States, and by Mr. *Webster* and Mr. *Winder*, for the prisoners.[a]

*March 1st.*

Mr. Justice JOHNSON delivered the opinion of the Court. A variety of questions have been referred to this Court in these cases, and in the decisions to be certified to the Circuit Court, it will be necessary to notice each question in every case; but in the opinion now to be expressed, the whole may be considered in connexion, as they all depend upon the construction of the same laws.

A piracy committed from on board a vessel, which has thrown off her national character by cruizing piratically, is punishable under the act of 1790, c. 36., whatever might have been the original national character of such vessel.

In the two cases of Smith and Klintock, it has been already adjudged, that the 8th section of the act of 1790 was not repealed by the 5th section of that of 1819, and that the decision in Palmer's case does not apply to the case of a crew, whose conduct

*a* The substance of their arguments will be found in the preceding cases of the United States v. Klintock, *ante,* p. 144, and the United States v. Smith, *ante,* p. 153.

is such as to set at nought the idea of thus acting under allegiance to any acknowledged power. From which it follows, that when embarked on a piratical cruize, every individual becomes equally punishable under the law of 1790, whatever may be his national character, or whatever may have been that of the vessel in which he sailed, or of the vessel attacked.

This decision furnishes an answer to all those questions made in the above cases, which are founded on distinctions in the national character of the prisoner, or in that of the vessels, in relation to the piracies committed by the crew of the Louisa. The moment that ship was taken from her officers, and proceeded on a piratical cruize, the crew lost all claim to national character, and whether citizens or foreigners, became equally punishable under the act of 1790. It also furnishes an answer to all the exceptions taken in the case of piracy charged against Furlong. For whatever the Court might have thought on the effect of the act of 1819, he would have been still punishable under the act of 1790. The indictment against him is general, *against the form of the statute in such case made and provided*, and it matters not that his offence was committed subsequent to passing the act of 1819, since the other act still remains in force, and reaches his case.

It would seem to be unnecessary to go further in the cases against Furlong, as this conclusion decides his fate ; but this Court cannot foresee how far it may be necessary to the administration of justice, against accessories or otherwise, that the question in the cases of murder should also be decided.

The question whether *murder* committed at sea on board a foreign vessel be punishable by the laws of the United States, if committed by a foreigner upon a foreigner, is one which involves a variety of considerations, and which, in the two cases before us, is presented under an obvious distinction ; on the one indictment it appears as having been committed simply on board the Anne of Scarborough, a foreign vessel, by a foreigner upon a foreigner ; on the other, as committed on board the Anne of Scarborough, from an American vessel by a mariner of the American vessel. It is obvious that neither case comes within the express words of the decision in Palmer's case. And with regard to the case in which the American vessel is brought in view, there can exist but one difficulty.

The Courts of the United States have jurisdiction of a murder committed on the high seas from a vessel belonging to the U. States, by a foreigner, being on board of such vessel, upon another foreigner being on board of a foreign vessel.

No difference can be supposed to exist between the case of a murder committed on the seas by means of a gun discharged from a vessel, and by means of a boat's-crew despatched for that purpose, as was actually the case here. And as to the right of the United States to punish all offences committed on or from on board their own vessels, it cannot be doubted, nor has it been doubted that the act of 1790 extends to such offences when committed on the seas. But, we have decided, that in becoming a pirate, the Mary of Mobile, from which the prisoner committed this offence, lost her national character. Could she then be denominated an American vessel ?

We are of opinion, that the question is immaterial ; for, whether as an American or a pirate ship, the of-

fence committed from her was equally punishable, and the words of the act extend to her in both cha-racters. But if it were necessary to decide the ques-tion, we should find no difficulty in maintaining, that no man shall, by crime, put off an incident to his si-tuation which subjects him to punishment. A claim to protection may be forfeited by the loss of national character, where no rights are acquired, or immunity produced by that cause. The other case presents a question of more difficulty. It includes the case of a murder committed by one of a crew upon another, on board a foreign vessel on the high seas. The pri-soner is a British subject, the deceased was the same, and the ship also British.

1820.

U. States
v.
Pirates.

The Courts of the United States have not jurisdiction of a murder com-mitted by one foreigner on another fo-reigner, both being on board a foreign ves-sel.

This, though not in all its circumstances the same, is in principle precisely that of the United States v. Palmer. The only difference is, that the case of Palmer supposes the prisoner and the deceased to belong to different vessels, and the certificate of the Court would seem to cover the case of an American as well as a foreigner, who commits an offence on board a foreign vessel.

So far as relates to the point now under conside-ration, I have no objection to accede to the decision in the case of Palmer. I did not unite in the opinion of the Court in that case, on this point, because I thought it was carried too far in being extended to *piracy* as well as *murder*, and to *American* citizens as well as foreigners. To me it appears, that the only fair deduction from the obvious want of precision in language and in thought, discoverable in the act of 1790, and insisted on in the case of Palmer, is, that in

construing it we should test each case by a reference to the punishing powers of the body that enacted it. The reasonable presumption is, that the legislature intended to legislate only on cases within the scope of that power; and general words made use of in that law, ought not, in my opinion, to be restricted so as to exclude any cases within their natural meaning. As far as those powers extended, it is reasonable to conclude, that Congress intended to legislate, unless their express language shall preclude that conclusion.

It is true, that the 8th section declares murder as well as robbery to be piracy; but, in my view, if any thing is to be inferred from this association, it is only that they meant to assert the right of punishing murder to the same extent that they possessed the right of punishing piracy; which would be carrying the construction beyond what I contend for. The contrary conclusion, viz. that they meant to limit the cases of piracy made punishable under that act, to the cases in which they might, upon principle, punish murder, is rebutted by the generality of the terms used; and it would seem that, with this object in view, they ought to have taken the contrary course, and declared *piracy* to be *murder*.

It is obvious that the penman who drafted the section under consideration, acted from an indistinct view of the divisions of his subject. He has blended all crimes punishable under the admiralty jurisdiction in the general term of piracy. But there exist well-known distinctions between the crimes of piracy and murder, both as to constituents and

incidents. Robbery on the seas is considered as an offence within the criminal jurisdiction of all nations. It is against all, and punished by all; and there can be no doubt that the plea of *autre fois acquit* would be good in any civilized State, though resting on a prosecution instituted in the Courts of any other civilized State. Not so with the crime of murder. It is an offence too abhorrent to the feelings of man, to have made it necessary that it also should have been brought within this universal jurisdiction. And hence, punishing it when committed within the jurisdiction, or, (what is the same thing,) in the vessel of another nation, has not been acknowledged as a right, much less an obligation. It is punishable under the laws of each State, and I am inclined to think that an acquittal in this case would not have been a good plea in a Court of Great Britain. Testing my construction of this section, therefore, by the rule that I have assumed, I am led to the conclusion, that it does not extend the punishment for murder to the case of that offence committed by a foreigner upon a foreigner in a foreign ship. But otherwise as to piracy, for that is a crime within the acknowledged reach of the punishing power of Congress. As to our own citizens, I see no reason why they should be exempted from the operation of the laws of the country, even though in foreign service. Their subjection to those laws follows them every where; in our own Courts they are secured by the constitution from being twice put in jeopardy of life or member, and if they are also made amenable to the

laws of another State, it is the result of their own act in subjecting themselves to those laws.

Nor is it any objection to this opinion, that the law declares murder to be *piracy*. These are things so essentially different in their nature, that not even the omnipotence of legislative power can confound or identify them. Had Congress, in this instance, declared piracy to be murder, the absurdity would have been felt and acknowledged; yet, with a view to the exercise of jurisdiction, it would have been more defensible than the reverse, for, in one case it would restrict the acknowledged scope of its legitimate powers, in the other extend it. If by calling murder *piracy*, it might assert a jurisdiction over that offence committed by a foreigner in a foreign vessel, what offence might not be brought within their power by the same device ? The most offensive interference with the governments of other nations might be defended on the precedent. Upon the whole, I am satisfied that Congress neither intended to punish murder in cases with which they had no right to interfere, nor leave unpunished the crime of piracy in any cases in which they might punish it : and this view of the subject appears to me to furnish the only sufficient key to the construction of the 8th section of the act of 1790.

As to piracy, since the decision that a vessel, by assuming a piratical character, is no longer included in the description of a foreign vessel, no case of difficulty can occur, unless the piracy be committed by the crew of a foreign vessel upon their own vessel, or by persons issuing immediately from shore. If

such cases occur under the act of 1790, I shall respectfully solicit a revision of Palmer's case, if it be considered as including those cases. And shall do the same in the case of murder committed by an American in a foreign ship, if it ever occur; under the belief that it never could have been the intention of Congress that such an offender should find this country a secure assylum to him.

There are a few minor points presented in these cases, which it is necessary to notice.

It was moved in favour of the prisoners, that the only legal testimony of the character of the ships plundered, must have relation to their register, or rather, to the documentary papers which establish their national character. But this we think wholly indefensible. It is obvious, that such testimony might be suppressed in various ways by the aggressors. Nor is it at all decisive of the real ownership of a vessel. Our laws recognize the possibility of the register's existing in the name of one, whilst the property is really in another person. The laws that require such documents to be on board a vessel, have relation to financial, commercial, or inter-national objects, but are not decisive or necessary in a prosecution for this offence. Property or character is a matter *in pais*, and so to be established. However, it is unnecessary to examine the question farther, as we have decided, that the national character of the vessels plundered was, in these cases, wholly immaterial to the crime.

It was also moved, in two of the cases of piracy, that as the offences charged were committed on ves-

1820.

U. States
v.
Pirates.

It is not necessary to produce documentary evidence, in order to prove the national character of a vessel, on an indictment for piracy.

sels then lying at anchor near the shore of the islands of Mayo and Bonavista, in a road, and within a marine league of the shore, the prisoners could not be convicted:

1. Because the words, "out of the jurisdiction of any particular State," in the 8th section of the act of 1790, includes foreign, as well as domestic States.

2. Because a vessel at anchor in a road, is not a vessel on the high seas, as charged in the indictment.

*The words, "out of the jurisdiction of any particular State," in the act of 1790, c. 36. construed to refer only to a particular State of the Union.*

On the first point, we think it obvious, that *out of any particular State*, must be construed to mean " *out of any one of the United States*." By examining the context, it will be seen, that *particular State* is uniformly used in contradistinction to *United States*. For what reason, it is not easy to imagine; but it is obvious, that the only piracies omitted to be punished by that act, are land piracies, and piracies committed in our waters.

*A vessel lying in an open roadstead of a foreign country, is "upon the high seas" within the act of 1790, c. 36. s. 8.*

On the second point, we are of opinion, that a vessel in an open road may well be found by a jury to be on the seas. It is historically known, that in prosecuting trade with many places, vessels lie at anchor in open situations, (and especially where the trade winds blow) under the lee of the land. Such vessels are neither in a river, haven, basin or bay, and are no where, unless it be on the seas. Being at anchor is immaterial, for this might happen in a thousand places in the open ocean, as on the Banks of Newfoundland. Nor can it be objected that it was within the jurisdictional limits of a foreign State:

for, those limits, though neutral to war, are not neutral to crimes.

1820.

U. States
v.
Pirates.

It was also moved, in the same cases, that as there were two counts in the indictment, the one charging the offences as committed on the high seas, the other in a haven, basin or bay, a general verdict of guilty could not be sustained on account of repugnancy and inconsistency, as both facts could not be true. But, on this, it is only necessary to remark, that each count is a distinct substantive charge. Internal repugnancy in any one is a good exception, but *non constat* as to the whole, taken severally, but each may be for a distinct offence.

Each count in an indictment, is a distinct substantive charge; and if the verdict conform to any one of the counts, which in itself will support the verdict, it is sufficient.

There is, finally, another question certified to this Court, in one of the cases which arose under the captures made by the Louisa. It is, whether an American citizen, fitting out a vessel in an American port, really to cruize against a power at peace with the United States, is protected by a commission from a power belligerent as to the power against which he undertakes to cruize, from offences committed by him against the United States?

A citizen of the U. States, fitting out a vessel in a port of the United States, to cruize against a power in amity with the United States, is not protected by a foreign commission from punishment for any offence committed against vessels of the United States.

It will be seen, that the object of this question is to bring the whole crew of the Louisa under the immunities which it is supposed Almeida might have claimed by virtue of his commission. But, having decided that the vessel and crew had forfeited all pretensions to national or belligerent character, this question is anticipated. Yet, lest the ingenious views on this point, presented to the Court by one of the gentlemen who argued it, should tempt the unwary into practices that may be fatal to them, we think it

proper to remark, that in Klintock's case it has been decided, that a belligerent character may be put off, and a piratical one assumed, even under the most unquestionable commission.  And if the laws of the United States declare those acts piracy in a citizen, when committed on a citizen, which would be only belligerent acts when committed on others, there can be no reason why such laws should not be enforced. For this purpose the 9th section of the act of 1790 appears to have been passed.  And it would be difficult to induce this Court to render null the provisions of that clause, by deciding either that one who takes a commission under a foreign power, can no longer be deemed a citizen, or that all acts committed under such a commission, must be adjudged belligerent, and not piratical acts.

The UNITED STATES v. JOHN FURLONG, *alias* JOHN HOBSON.

CERTIFICATE.—This cause came on to be heard on the transcript of the record of the Circuit Court of the United States for the District of Georgia, and on the question on which the Judges of that Court were divided in opinion, and was argued by counsel. On consideration whereof, this Court is of opinion, that the 8th section of the act of the 30th of April, 1790, on which the indictment is founded, is not repealed by the act of the 3d of March, 1819, entitled, " an act to protect the commerce of the United States, and to punish the crime of piracy."

The UNITED STATES v. JOHN FURLONG, *alias* JOHN HOBSON.

CERTIFICATE.—This cause came on to be heard on the transcript of the record of the Circuit Court of the United States for the District of Georgia, and on the questions on which the Judges of that Court were divided in opinion, and was argued by counsel. On consideration whereof, this Court is of opinion, as to the first and second questions stated by said Circuit Court, that it was not necessary the indictment should charge the prisoner as a citizen of the United States, nor the crime as committed on board an American vessel, inasmuch as it charges it to have been committed from on board an American vessel, by a mariner sailing on board an American vessel. And as to the third question, That the act of the 30th of April, 1790, is not virtually repealed by the act of the 3d of March, 1819, entitled, "an act to protect the commerce of the United States, and punish the crime of piracy."

The UNITED STATES v. GRIFFEN and BRAILSFORD.

CERTIFICATE.—This cause came on to be heard on the transcript of the record of the Circuit Court of the United States for the District of South Carolina, and on the questions on which the Judges of that Court were divided in opinion, and was argued by counsel. On consideration whereof, this Court

is of opinion, 1. That an American citizen fitting out a vessel in an American port, really to cruize against a power at peace with the United States, is not protected by a commission from a belligerent from punishment for any offence committed by him against vessels of the United States.

2. It is competent for a jury to find that a vessel within a marine league of the shore, at anchor in an open roadstead where vessels only ride under the shelter of the land, at a season when the course of the winds is invariable, is upon the high seas.

3. That the words, out of the jurisdiction of any particular State, in the 8th section of the act of Congress of the 30th of April, 1790, entitled, " an act for the punishment of certain crimes against the United States," must be construed to mean, out of the jurisdiction of any particular State of the United States.

4. That the 8th section of the act of the 30th of April, 1790, entitled, " an act for the punishment of certain crimes against the United States," is not repealed by the 8th section of the act of the 3d of March, 1819, entitled, " an act to protect the commerce of the United States, and to punish the crime of piracy."

5. That the 5th section of the act of the 3d of March, 1819, furnishes a sufficient definition of piracy, and that it is defined " robbery on the seas."

6. That considering this question, with reference to the case stated, the 8th section of the act of 1790 comprises the case of piracy committed by a foreigner in a foreign vessel upon any vessel, so as to

make him punishable with death, in as much as both vessel and crew no longer retained any pretention to national character after assuming that of a pirate.

7. That the national character of a vessel is a fact which a jury may find upon such evidence as will satisfy their minds, without production of the register, or proof of its having been on board of her.

8. That the 8th question is answered in the answer given to the fourth question.

## The UNITED STATES v. DAVID BOWERS and HENRY MATHEWS.

CERTIFICATE.—This cause came on to be heard on the transcript of the record of the Circuit Court of the United States, for the District of Georgia, and on the questions on which the Judges of that Court were divided in opinion, and was argued by counsel. On consideration whereof, this Court is of opinion, 1. That the act of the 30th of April, 1790, entitled, &c. section 8th, does extend to piracy committed by the crew of a foreign vessel on a vessel exclusively owned by persons not citizens of the United States, in the case of these prisoners, in which it appears that the crew assumed the character of pirates, whereby they lost all claim to national character or protection.

2. That the 8th section of the act of the 30th of April, 1790, entitled, &c. has not been repealed by the 8th section of the act of March 3, 1819, entitled, &c.

The UNITED STATES v. DAVID BOWERS and
HENRY MATHEWS.

CERTIFICATE.—This cause came on to be heard on the transcript of the record of the Circuit Court of the United States for the District of Georgia, and on the questions on which the Judges of that Court were divided in opinion, and was argued by counsel. On consideration whereof, this Court is of opinion, 1. That it is competent to prove the national character of an American vessel without evidence of her register.

2. That it is competent for the jury to find that the piracy was committed on the high seas, upon evidence that the Asia, at the time she was boarded, was at anchor in an open roadstead at the island of Bonavista.

3. That the 8th section of the act of the 30th of April, 1790, entitled, &c. is not repealed by the 8th section of the act of March 3, 1819, entitled, &c.

4. That each count in an indictment is a substantive charge, and if the finding conform to any one of them which in itself will support the verdict, it is sufficient to give judgment.