BARKETT, Circuit Judge,
specially concurring:
I concur in the. majority’s conclusion that drug trafficking does not constitute an “Offence[] against the Law of Nations” and agree with much of the majority’s opinion. However, my conclusion is based on my view that when conduct has no connection to the United States, such as the conduct at issue here, it can only be punished as an “Offence[ ] against the Law of Nations” if it is subject to universal jurisdiction.
I agree with the majority that the “Of-fences against the Law of Nations” Clause must be interpreted in accordance with principles of customary international law. That is to say, customary international law necessarily informs what conduct may be *1259 punished as an “Offence[ ] against the Law of Nations.”[1] However, I believe that customary international law contains both a substantive and a jurisdictional component. Thus, when analyzing Congress’s authority to proscribe conduct under the Offences Clause in light of customary international law, a court determines both whether the conduct at issue violates a ‘“norm[] of international law* ” that is “ ‘well-established’ and ‘universally recognized,’ ” Velez v. Sanchez, 693 F.3d 308, 316 (2d Cir.2012) (internal citation omitted), and whether customary international law provides some basis for the exercise of jurisdiction over that conduct, Hartford Fire Ins. Co. v. California, 509 U.S. 764, 815, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (Scalia, J., dissenting) (“ ‘[T]he law of nations,’ or customary international law, includes limitations on a nation’s exercise of its jurisdiction to prescribe.”). Only conduct that violates a norm of customary international law and is subject to United States jurisdiction under customary international law principles may be prosecuted in United States courts as an “Offence[ ] against the Law of Nations.”[2]
Customary international law recognizes five theories of jurisdiction: territorial, protective, national, passive personality, and universality. See United States v. Benitez, 741 F.2d 1312, 1316 (11th Cir. 1984). The first four' theories permit nations to exercise jurisdiction over offenses that implicate domestic interests — that is, offenses that occur within a nation’s territory and those that occur outside the territory but have effects within it. In contrast, the universality theory authorizes any nation to exercise jurisdiction over certain offenses, even when no domestic interests are directly implicated. Here, because the drug trafficking occurred outside of United States territory and had no direct impact on the interests of the United States, the only potential basis for jurisdiction is the universality principle.[3]
Although the class of offenses that triggers universal jurisdiction has expanded over the last century, the scope of univer *1260 sal jurisdiction remains exceedingly narrow:
There are two premises underlying universal jurisdiction. The first involves the gravity of the crime. Crimes subject to the universality principle are so threatening to the international community or so heinous in scope and degree that they offend the interest of all humanity, and any state may, as humanity’s agent, punish the offender. The second involves the locus delicti (place of the act). Crimes subject to the universality principle occur in territory over which no country has jurisdiction or in situations in which the territorial State and State of the accused’s nationality are unlikely to exercise jurisdiction, because, for example, the perpetrators are State authorities or agents of the State.
Michael P. Scharf, Application of Treaty-Based Universal Jurisdiction to Nationals of Non-Party States, 35 New Eng. L.Rev. 363, 368-69 (2001).
The government argues that drug trafficking is an “Offence[ ] against the Law of Nations” that is subject to universal jurisdiction because Congress, when enacting the MDLEA, stated that drug trafficking is “universally condemned” and is a “threat to the security and societal well-being of the United States[J” 46 U.S.C. § 70501. However, it is not Congress’s declaration that establishes conduct as subject to universal jurisdiction under customary international law. Rather, the scope of universal jurisdiction is “ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognising and enforcing that law.” United States v. Smith, 18 U.S. (5 Wheat.) 153, 160-61, 5 L.Ed. 57 (1820); see also Anthony J. Colangelo, The Legal Limits of Universal Jurisdiction, 47 Va. J. Int’l L. 149, 150 (2006) (“If national courts prosecute on grounds of universal jurisdiction, they must use the international legal definitions ... of the universal crimes they adjudicate; otherwise, their exercise of universal jurisdiction contradicts the very international law upon which it purports to rely.”).
Furthermore, universal condemnation is by itself insufficient to place an offense within the scope of universal jurisdiction. As noted by the Supreme Court in United States v. Furlong, murder may be universally condemned, but it is not subject to universal jurisdiction. 18 U.S. (5 Wheat.) 184, 197, 5 L.Ed. 64 (1820) (“[P]unishing [murder] when committed within the jurisdiction ... of another nationf ] has not been acknowledged as a right, much less an obligation. It is punishable under the laws of each State .... ”). For universal jurisdiction to apply to an offense, the international community must reach both a “substantive agreement” that the offense is “universally condemned” and a “procedural agreement that universal jurisdiction exists to prosecute [that offense].” Sosa v. Alvarez-Machain, 542 U.S. 692, 762, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (Breyer, J., concurring). Thus, “because universal jurisdiction over a crime is established by international consensus, a state can only invoke universal jurisdiction for those acts that fall within the specific ‘subset of [universally condemned] behavior’ that the international community has agreed warrants the assertion of universal jurisdiction.” United States v. Hasan, 747 F.Supp.2d 599, 608 (E.D.Va.2010).[4]
Drug trafficking does not fall within that subset. No source of customary interna *1261 tional law has designated drug trafficking as being subject to universal jurisdiction. The academic community is in accord that drug trafficking is not considered a universal jurisdiction offense. Although “[international criminal law evidences the existence of twenty-seven crime categories[,]”[5] only the so-called jus cogens crimes of “piracy, slavery and slave-related practices, war crimes, crimes against humanity, genocide, apartheid, and torture” have thus far been identified as supporting universal jurisdiction. Bassiouni, supra, at 106-09; see also, e.g., Sosa, 542 U.S. at 762, 124 S.Ct. 2739 (Breyer, J., concurring) (listing crimes supporting universal jurisdiction to include torture, genocide, crimes against humanity, and war crimes); Restatement (Third) of Foreign Relations Law § 404 (1987) (recognizing that universal jurisdiction applies only to “prescribe punishment for certain offenses recognized by the community of nations as of universal concern, such as piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism”); The Princeton Principles on Universal Jurisdiction 48 (Stephen Macedo et al. eds., 2001) (noting that drug crimes “were raised as candidates for inclusion” in the Princeton Principles’ list of serious crimes subject to universal jurisdiction, but ultimately were not selected); Anne H. Geraghty, Universal Jurisdiction and Drug Trafficking: A Tool for Fighting One of the World’s Most Pervasive Problems, 16 Fla. J. Int’l L. 371, 372 (2004) (explaining that the idea of utilizing universal jurisdiction as a tool for prosecuting drug trafficking has never been “widely embraced”); Christina E. Sorensen, Drug Trafficking on the High Seas: A Move Toward Universal Jurisdiction Under International Law, 4 Emory Int’l L.Rev. 207, 208 (1990) (“Drug trafficking is ... not subject to universal jurisdiction.”).
Nor are there any judicial decisions recognizing Congress’s authority to punish drug trafficking that has no connection to the United States as an “Offence[ ] against the Law of Nations.” Indeed, several courts of appeals have held that drug trafficking is not a universal jurisdiction offense, albeit discussing drug trafficking as an offense occurring on the “high Seas” rather than as an “Offence[] against the Law of Nations.” See, e.g., United States *1262 v. Perlaza, 439 F.3d 1149, 1161-63 (9th Cir.2006) (rejecting the government’s argument that it had jurisdiction over drug trafficking conducted on a go-fast vessel under the principle of universal jurisdiction); United States v. Wright-Barker, 784 F.2d 161, 168 n. 5 (3d Cir.1986) (“international agreements have yet to recognize drug smuggling ... as a heinous crime subject to universal jurisdiction.”). Nor have we been able to find any case decided by any international court defining drug trafficking as an offense subject to universal jurisdiction.
Because the drug trafficking at issue here is not subject to universal jurisdiction and no other internationally recognized jurisdictional basis applies, Congress does not have the authority to proscribe these defendants’ conduct under Article I, Section 8, Clause 10 of the Constitution. The government’s argument that this authority can be supplied by another nation’s consent to United States jurisdiction is without merit. As Judge Torruella illustrates in United States v. Cardales-Luna, accepting this argument leads to absurd results:
Perhaps an even more relevant example would be if Congress passed legislation attempting to apply the criminal laws of the United States, with the Bolivian government’s consent, to the conduct of Colombian nationals in Bolivia traveling over its mountain roads carrying a load of coca leaves destined for Peru. The power of Congress to legislate in such a case cannot be countenanced even with the consent of Bolivia, whose consent is ultimately irrelevant, for Bolivia cannot grant Congress powers beyond those allotted to it by the Constitution.
632 F.3d 731, 741 (1st Cir.2011) (Torruella, J., dissenting).

. The majority questions whether the constitution imposes any limit on the power of Congress to violate international law. However, Congress may only violate international law to the extent that it is acting within the authority granted to it by the Constitution. In other words, while Congress may violate international law when invoking its authority under other constitutional clauses, it cannot do so when acting under the Offences Clause, which is defined by customary international law. Congress cannot violate international law when the constitution says that it is bound by international law.

. That is not to say, as the majority seems to suggest, that I consider a failure to comply with jurisdictional principles under international law to be a defense to prosecution under the Maritime Drug Law Enforcement Act ("MDLEA”). See 46 U.S.C. § 70505 ("A claim of failure to comply with international law does not divest a court of jurisdiction and is not a defense to a proceeding under this chapter.”). Rather, to the extent that intemational law is incorporated into the Offences Clause of the Constitution, jurisdictional principles of international law must necessarily be considered in determining whether Congress has the authority to proscribe a defendant's conduct under that Clause.

.Conduct can also be punished as an "Of-fence!] against the Law of Nations” if there is a jurisdictional basis other than universal jurisdiction. For example, in United States v. Arjona, 120 U.S. 479, 7 S.Ct. 628, 30 L.Ed. 728 (1887), the Supreme Court held that counterfeiting of foreign securities was an “Offence!] against the Law of Nations” where the conduct took place within the United States and the United States, thus, had territorial jurisdiction. It would be a different'scenario if the act of counterfeiting foreign securities, albeit a violation of a norm of international law, had no connection to the United States and occurred in another country. I do not believe the United States could prosecute it as an "Offence! ] against the Law of Nations” without a jurisdictional basis.

. I agree with the majority that drug trafficking probably does not violate a norm of customary international law as of yet. However, I do not believe that this is because the drug trade continues to exist or because some signatories to an international drug treaty have not complied with their obligations under the treaty. There are undisputed violations of *1261 customary international law, such as torture, that also continue to exist and with regard to which countries may not comply with their treaty-based obligations.
However, as explained above, even if drug trafficking were to be considered a violation of a norm of customary international law, I do not believe that the United States would have the authority to prosecute drug trafficking that has no connection to the United States as an "Offence[] against the Law of Nations” because drug trafficking is not subject to universal jurisdiction and no other jurisdictional basis exists.

. These international crimes are:
aggression, genocide, crimes against humanity, war crimes, crimes against the UN and associated personnel, unlawful possession and/or use of weapons, theft of nuclear materials, mercenarism, apartheid, slavery and slave-related practices, torture, unlawful human experimentation, piracy, aircraft hijacking, unlawful acts against civil maritime navigation, unlawful acts against internationally protected persons, taking of civilian hostages, unlawful use of the mail, nuclear terrorism, financing of international terrorism, unlawful traffic in drugs and dangerous substances, destruction and/or theft of national treasures and cultural heritage, unlawful acts against the environment, international traffic in obscene materials, falsification and counterfeiting of currency, unlawful interference with submarine cables, and bribery of foreign public officials.
M. Cherif Bassiouni, Universal Jurisdiction for International Crimes: Historical Perspectives and Contemporary Practice, 42 Va. J. Int’l L. 81, 107 (2001).