LIPEZ, Circuit Judge.
Our opinion in United States v. Angulo-Hernández, 565 F.3d 2 (1st Cir.2009), describes the facts underlying this Maritime Drug Law Enforcement Act (MDLEA) appeal. Appellant José del Carmen Car-dales-Luna was one of eight crew members serving on the Bolivian flag vessel Osiris II when it was boarded by the United States Coast Guard in international waters on February 4, 2007. In the course of a six-day search of the Osiris II, Coast Guard officers discovered 400 kilograms of cocaine, twenty-five kilograms of heroin, and a machine gun hidden in a compartment near the rear of the vessel. Car-dales-Luna and his seven fellow crew members were subsequently charged in a three-count superseding indictment with (1) conspiracy to possess with intent to distribute the drugs found on the Osiris II, see 46 U.S.C. § 70506(b); (2) aiding and abetting the possession of those drugs with intent to distribute, see 46 U.S.C. § 70503(a)(1), 18 U.S.C. § 2(a); and (3) aiding and abetting the possession of a machine gun in furtherance of a drug trafficking crime, see 18 U.S.C. §§ 2(a), 924(c)(1)(B)(ii).
The other seven crew members were tried jointly. The jury found four of them guilty on all counts and three not guilty on all counts. We affirmed the four convictions in Angulo-Hernández, a set of appeals that focused on whether the government had presented sufficient evidence to prove that the defendants knew the drugs were hidden on the vessel. See 565 F.3d at 7-9. For reasons that are not clear from the record, Cardales-Luna was tried separately from his co-defendants. After a one-day trial, the second jury found Car-dales-Luna guilty on all three counts. At sentencing, the court dismissed the gun charge, as it had at the sentencing of the defendants found guilty in the Angulo-Hernández trial. This appeal followed.
I.
Cardales-Luna contends that the government proved only that he was present on a vessel that happened to be carrying drugs, not that he knowingly possessed those drugs with the intent to distribute. We considered and rejected the same sufficiency of the evidence argument in Angulo-Hernández, where we held that the circumstantial evidence was sufficient for the jury to infer knowledge. 565 F.3d at 9. In particular, we held that the route of the *733 vessel, the quantity and value of the drugs, the low value and unprofessional handling of the other cargo, and evidence suggesting that the compartment containing the drugs had recently been sealed all supported a finding that the crew members knew about the drug trafficking operation.[1] Id. at 8-9.
At Cardales-Luna’s trial, the government offered the same circumstantial evidence that it had offered against two of the other crew members, José Luis Casiano-Jiménez and Gustavo Rafael Brito-Fernández, whose convictions we affirmed in Angulo-Hernández.[2] Cardales-Luna did not testify at trial, nor did he offer any evidence that would favorably distinguish him from Casiano-Jiménez and Brito-Fernández. Indeed, the one material fact distinguishing Cardales-Luna from Brito-Fernández arguably cuts in the government’s favor: a Coast Guard officer testified that the other crew members appeared to treat Cardales-Luna and Casiano-Jiménez with deference, which the officer viewed as an indication that they were higher on the crew’s hierarchy than the others (that is, closer to the status of the captain and engineer than the ordinary crew members).[3] The jury could have inferred from that evidence that Car-dales-Luna was more likely to know about the drug smuggling operation than Brito-Fernández.
In short, the evidence against Car-dales-Luna was at least as strong as — and materially identical to — the evidence against Casiano-Jiménez and Brito-Fernández, which we held to be sufficient to prove knowledge in Angulo-Hernández. There is a question, however, of what weight our decision in Angulo-Hernández should be given in this appeal. In general, “accepted principles of stare decisis militate strongly in favor of resolving identical points in the same way for identically situated defendants.” United States v. Diaz-Bastardo, 929 F.2d 798, 799 (1st Cir.1991). Those principles suggest that we should follow our previous decision as a matter of stare decisis.
There are two potential difficulties with that route, however. The first is that the *734 government conceded at oral argument that our prior decision has no stare decisis effect here. Yet that representation, though entitled to some weight, is not binding on us. United States v. Bucci 582 F.3d 108, 119 n. 9 (1st Cir.2009). As the Supreme Court has pointed out, our “judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties.” Young v. United States, 315 U.S. 257, 259, 62 S.Ct. 510, 86 L.Ed. 832 (1942). A concession by the government therefore “does not relieve [us] of the performance of the judicial function.” Id. at 258, 62 S.Ct. 510; see also Roberts v. Galen of Va., Inc., 525 U.S. 249, 253, 119 S.Ct. 685, 142 L.Ed.2d 648 (1999) (per curiam) (noting that “the concession of a point on appeal by respondent is by no means dispositive of a legal issue”). If the law requires us to adhere to Angulo-Hernández, we must adhere to it, the government’s concession to the contrary notwithstanding.
The second difficulty is that there is limited authority directly addressing the role of stare decisis in the sufficiency of the evidence context. It is possible that this limited authority reflects a belief that sufficiency of the evidence rulings are categorically exempt from the ordinary rules of stare decisis. Sufficiency of the evidence rulings, after all, “generate[] no precedential force upon the decisionmaking processes of fact finders at criminal trials.” United States v. Willoughby, 27 F.3d 263, 268 (7th Cir.1994). Perhaps the same principle extends to appellate review for evidentiary sufficiency as well.
We reject that proposition. The role of an appellate court in judging the sufficiency of the evidence is fundamentally different from the role of the jury in finding the facts and determining guilt. Whereas the jury must determine whether, in its subjective judgment, the government has overcome the presumption of innocence and eliminated any reasonable doubt that the defendant committed the charged offense, a court reviewing for sufficiency is not permitted to “make its own subjective determination of guilt or innocence.” Jackson v. Virginia, 443 U.S. 307, 319 n. 13, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Rather, appellate courts ask “whether the evidence introduced is sufficient to convict as a matter of law (which is not to say the jury must convict, but only that, as a matter of law, the case may be submitted to the jury and the jury may convict).” Carmell v. Texas, 529 U.S. 513, 547, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) (emphasis altered). The question calls for a “binary response: Either the trier of fact has power as a matter of law [to make a finding of guilt] or it does not.” Schlup v. Delo, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).
The distinction between fact-finding and sufficiency review is important because stare decisis “deals only with law.” United States v. Reveron Martinez, 836 F.2d 684, 691 (1st Cir.1988) (internal citations and quotation marks omitted). The trier of fact is thus free to make an independent assessment of the evidence because “the facts of each successive case must be determined by the evidence adduced at trial.” Id. By contrast, even the narrowest conception of stare decisis demands that two panels faced with the same legal question and identical facts reach the same outcome. See 18 James Wm. Moore et al., Moore’s Federal Practice § 134.03[1] (3d ed. 2010) (“At a minimum, stare decisis extends to the result reached by the prior authoritative decisions.”); Drive Fin. Servs., L.P. v. Jordan, 521 F.3d 343, 349 (5th Cir.2008) (“[W]hen a future case presents the same facts as a past case decided by a higher courtf,] stare decisis requires that we decide those cases in a similar *735 manner.”); Tate v. Showboat Marina Casino P’ship, 431 F.3d 580, 582 (7th Cir. 2005) (noting that the holding of a case includes “the facts and the outcome”).
The proposition that courts policing the legal boundaries of the fact-finder’s authority must act in conformity with binding legal precedent is confirmed explicitly in a few cases. E.g., Willoughby, 27 F.3d at 268 (noting that the stare decisis effect of a prior panel decision extends to “other appellate tribunals in the same jurisdiction faced with comparable challenges to the sufficiency of the evidence”); United States v. Gillis, 942 F.2d 707, 711 (10th Cir.1991) (holding that a previous panel decision “is stare decisis on the issue of sufficiency of the evidence to support this conviction”). It is also implicit in many others. E.g., United States v. Johnson, 519 F.3d 478, 485-86 (D.C.Cir.2008) (affirming conviction 1 on the ground that “[t]he evidence introduced in this case is indistinguishable from evidence we have previously held sufficient”); United States v. Hernandez, 141 F.3d 1042, 1055-56 (11th Cir.1998) (reversing conviction on the ground that the evidence was indistinguishable from evidence previously held insufficient).
There are of course limits to stare decisis, which we have catalogued in numerous cases. See, e.g., United States v. Rodriguez, 527 F.3d 221, 224-25 (1st Cir. 2008); EEOC v. Trabucco, 791 F.2d 1, 4 (1st Cir.1986).[4] Most relevantly for our purposes, “a decision dependent upon its underlying facts is not necessarily controlling precedent as to a subsequent analysis of the same question on different facts and a different record.” Gately v. Massachusetts, 2 F.3d 1221, 1227 (1st Cir.1993). That rule is no more than a restatement of the familiar idea that prior cases are often distinguishable on their facts. It also likely explains why stare decisis is so infrequently invoked by name in sufficiency of the evidence cases. As a practical matter, the evidence in one case is rarely duplicated in a subsequent case, and so precedents in the sufficiency of the evidence arena tend to serve primarily as rough guides that can be likened or distinguished according to the accepted norms of legal reasoning. Yet even accepting that there are legitimate grounds for distinguishing cases on the basis of materially different facts, cf. Trabucco, 791 F.2d at 2 (noting that stare decisis “leaves some room for judgment as to its preclusive power”), it remains true that a panel may not disregard binding precedent simply out of disagreement. See Lacy v. Gardino, 791 F.2d 980, 984-85 (1st Cir.1986).
Therefore, it would be no small matter to find that an area of the law was categorically exempt from the constraining force of precedent. Stare decisis is always “the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Indeed, the Supreme Court has described stare decisis as “a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurispruden *736 tial system that is not based upon ‘an arbitrary discretion.’ ” Patterson v. McLean Credit Union, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (quoting The Federalist No. 78), superseded on other grounds, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071. If courts of appeals rendering legal decisions do not feel obligated to treat materially identical cases alike, the law will largely depend upon who happens to be making the decision, and our adherence to the rule of law will be diminished. Cf. James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 537, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (opinion of Souter, J.) (the principle “that litigants in similar situations should be treated the same” is “a fundamental component of stare decisis and the rule of law generally”).
We are thus drawn to an inescapable conclusion: although Angulo-Hernández has no res judicata effect here, “we nonetheless are bound to follow it, under principles of stare decisis, insofar as the record now before us does no more than replicate the same facts that were before us” in the previous appeal. Perez v. Volvo Car Corp., 247 F.3d 303, 313 (1st Cir.2001). As we have already said, Cardales-Luna has not pointed to any fact or circumstance that favorably distinguishes his case from that of Casiano-Jiménez and Brito-Fernández. The exact same evidence that we held to be sufficient to prove knowledge in Angulo-Hernández was offered against Cardales-Luna in his separate trial, and nothing in the record of this case suggests that the four circumstantial considerations we considered dispositive in Angulo-Hernández apply with any less force here. We therefore follow Angulo-Hernández in concluding that the evidence against Car-dales-Luna was sufficient to sustain his conviction.
II.
Cardales-Luna raises a second issue that we did not squarely decide in Angulo-Hemández, apparently because the other defendants did not raise it on appeal. The MDLEA prohibits drug trafficking aboard “a vessel subject to the jurisdiction of the United States,” 46 U.S.C. § 70503(a)(1), which includes “a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States,” id. § 70502(c)(1)(C). To prove that the Osiris II was subject to the jurisdiction of the United States, the government presented the certification of G. Philip Welzant, U.S. Coast Guard Liaison Officer to the Bureau of International Narcotics and Law Enforcement Affairs, U.S. Department of State, who declared: “On February 5th, 2007, Bolivian authorities notified the United States that the Government of Bolivia waived objection to the enforcement of U.S. laws by the United States with respect to the vessel Osiris II, including its cargo and all persons onboard.”
Cardales-Luna contends that Commander Welzant’s certification is deficient because it does not state the name of the Bolivian official involved or the exact time and means of the communication between the two governments. In support of his position, he cites United States v. Leuro-Rosas, a decision in which we quoted from the legislative history of the MDLEA:
In instances where the United States is required to prove a foreign nation’s consent or waiver of objection to U.S. enforcement, or such a nation’s denial of claim of registry, this section permits proof by certification of the Secretary of State or the Secretary’s designee. Such a certification should spell out the circumstances in which the consent, waiver, or denial was obtained, including the name and title of the foreign official *737 acting on behalf of his government, the precise time of the communication, and the means by which the communication was conveyed.
952 F.2d 616, 620 (1st Cir.1991) (quoting S.Rep. No. 99-530, at 14 (1986), reprinted in 1986 U.S.C.C.A.N. 5986, 6000-01). We implied in Leuro-Rosas that a certification that did not substantially comply with the “requirements articulated by Congress” might be rejected as insufficient to prove the foreign nation’s consent. See id. at 620-21.
Any argument under Leuro-Rosas is unavailing to Cardales-Luna because the MDLEA has been materially amended since we decided that case. When we heard Leuro-Rosas, the statute provided that the foreign nation’s consent “may be proved” by certification of the Secretary of State or her designee. Id. at 619 (quoting former 46 U.S.C. app. § 1903(c)(1)). That left open the possibility that a defendant could “look behind the State Department’s certification to challenge its representations and factual underpinnings.” United States v. Guerrero, 114 F.3d 332, 341 (1st Cir.1997) (reserving the issue).
Congress effectively foreclosed that possibility in 1996, when it amended the MDLEA to provide that “[cjonsent or waiver of objection by a foreign nation to the enforcement of United States law by the United States ... is proved conclusively by certification of the Secretary of State or the Secretary’s designee.”[5] 46 U.S.C. § 70502(c)(2) (emphasis added). Under the current statute, the Secretary of State (or her designee) need only certify that the “foreign nation” where the vessel is registered “has consented or waived objection to the enforcement of United States law by the United States.” Id. § 70502(c)(1)(C). Such a certification is “conclusive[ ],” and any further question about its legitimacy is “a question of international law that can be raised only by the foreign nation.” United States v. Bustos-Useche, 273 F.3d 622, 627 & n. 5 (5th Cir.2001). Commander Welzant’s terse certification, though not in the preferred form, was therefore sufficient to establish that the Osiris II was “subject to the jurisdiction of the United States.”
III.
Finally, we must address one other matter. We acknowledge the forceful dissent by Judge Torruella concluding that Congress exceeded its authority under Article I of the Constitution by enacting 46 U.S.C. §§ 70502(c)(1)(C) and 70503(a)(1) and thereby authorizing the enforcement of United States criminal law against people and activities lacking any nexus with this country. Judge Torruella asserts that this constitutional challenge implicates the subject matter jurisdiction of the court and must be addressed by us even though the constitutional challenge was never raised below or on appeal. We respectfully disagree with the assertion that this constitutional challenge posed by Judge Torruella involves the subject matter jurisdiction of the court. Instead, we agree with the position of the D.C. Circuit in United States v. Baucum, 80 F.3d 539, 541 (D.C.Cir.1996): “If a challenge to the constitutionality of an underlying criminal statute always implicated subject-matter jurisdiction, then federal courts, having an obligation to address jurisdictional questions sua sponte, would have to assure themselves of a statute’s validity as a threshold matter in any case. This re *738 quirement would run afoul of established Supreme Court precedent declining to address constitutional questions not put in issue by the parties.”

Affirmed.

TORRUELLA, Circuit Judge

. The vessel was en route from Colombia to the Dominican Republic. The drugs — approximately 400 bricks of cocaine and 25 bricks of heroin — were estimated to be worth $8 million. The cargo of 28,011 rolls of toilet paper, 207 Styrofoam coolers, and 14 pieces of office furniture was estimated to be worth $25,000. It was also stored haphazardly, suggesting that the legitimate cargo was no more than a cover for the more valuable hidden cargo. Finally, the screws securing the hatch on the hidden compartment were not tarnished, which indicated that the hatch had been recently sealed and made it “more likely ... that the crew members either witnessed the loading or participated in it.” Angulo-Hernández, 565 F.3d at 8.

. The evidence against the other two defendants- — -the ship's captain and the engineer— was somewhat stronger. See Angulo-Hernández, 565 F.3d at 8-9.

. The officer testified:
Of the seven crew members, two of them [Cardales-Luna and Casiano-Jiménez] stood out as being of a higher status than the other five. They were afforded seats. They had wooden chairs that those two individuals got to sit on. The other five sat on the deck.
When they had meals, they were given food first. And the general demeanor of the other five towards these seemed almost of subservience. It seemed almost to me, from my military experience, that they were officers to their enlisted, if I could make that analogy.
Cardales-Luna presented evidence that Casiano-Jiménez had an injured foot, which Cardales-Luna says was the reason Casiano-Jiménez was given a seat at meals. If anything, that evidence strengthens the inference that Cardales-Luna, who had no similar excuse, was treated better because he ranked higher than the other crew members.

. Particularly vexing problems arise when two binding precedents are in conflict. See, e.g., Reveron Martinez, 836 F.2d at 693 (Torruella, J., concurring in part and dissenting in part). Some other circuits have held that "where two previous holdings or lines of precedent conflict!,] the earlier opinion controls and is the binding precedent.” Rios v. City of Del Rio, 444 F.3d 417, 425 n. 8 (5th Cir.2006). We need not address that issue here. Angulo-Hernández is the only precedent at issue.

. There are minor differences in wording between the 1996 amendment and the version in force today, but they have no substantive significance. See United States v. Betancourth, 554 F.3d 1329, 1334 & n. 4 (11th Cir.2009).