# United States Court of Appeals
## For the First Circuit

No. 10-2281

UNITED STATES,

Appellee,

v.

FRANCISCO NUECI-PEÑA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before

Howard, Lipez and Thompson,
Circuit Judges.

Vivianne M. Marrero-Torres, Assistant Federal Defender, for appellant, with whom Hector L. Ramos-Vegas, Assistant Federal Defender, and Hector Guzman-Silva, Federal Defender, were on brief.
Justin Reid Martin, Assistant United States Attorney, for appellee, with whom Nelson Pérez-Sosa, Assistant United States Attorney, Appellate Chief, and Rosa Emilia Rodríguez-Velez, United States Attorney, were on brief.

March 19, 2013

**THOMPSON, Circuit Judge.** A massive drug interdiction on the high seas by the United States Coast Guard ("the Coast Guard") ended with the arrest and indictment of multiple defendants, including Appellant Francisco Nueci-Peña ("Nueci"). Nueci was sentenced to twenty-four years in prison after being convicted of possession with the intent to distribute over 1140 pounds of cocaine and heroin while on board a vessel in violation of the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 *et seq.* ("MDLEA"). On appeal, Nueci says his conviction cannot stand, arguing that Congress has no authority under Article 1, Section 8, Clause 10 of the United States Constitution to criminalize drug trafficking on board a vessel in international waters under the MDLEA without requiring a nexus between the conduct and the United States, and that the admission of certain certifications to support the jurisdiction determination violated his Sixth Amendment right to confrontation. After careful consideration, we affirm.

## BACKGROUND[1]

On February 23, 2007, the Coast Guard detected a suspicious go-fast vessel in Carribean waters. After the vessel twice attempted to evade authorities, the Coast Guard managed to stop and board the vessel to verify its nationality. Nueci, identifying himself as the master of the ship, said that the vessel

---

[1]United States v. Mitchell-Hunter, 663 F.3d 45 (1st Cir. 2011), a related case involving co-defendant Javier Mitchell-Hunter's appeal, recites similar facts.

was Colombian. Consistent with operational procedures, the Coast Guard contacted Colombian authorities for confirmation. The Colombian Navy, however, could neither confirm nor deny that the vessel was registered in Colombia. The Coast Guard, therefore, determined that the vessel was "without nationality" and subject to the jurisdiction of the United States under the MDLEA. The Coast Guard proceeded to search the vessel and discovered 396 kilograms of cocaine and 123 kilograms of heroin on board.

All six passengers on the vessel, including Nueci, were arrested and subsequently charged with aiding and abetting (Count I) and conspiracy (Count II) in the possession with intent to distribute at least five kilograms or more of cocaine and one kilogram or more of heroin on board a vessel subject to the jurisdiction of the United States (that is, a vessel without nationality), in violation of the MDLEA, 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), and 70506(b). They pled not guilty.

On October 23, 2007, on the eve of trial, Nueci moved to dismiss for lack of jurisdiction over the vessel, a motion joined by other co-defendants. In their motion, the defendants argued that the direct use of gunfire by the Coast Guard violated Article 12 of the Agreement Between the Government of the United States of America and the Government of the Republic of Colombia to Suppress Illicit Traffic by Sea, T.I.A.S. No. 12835. The defendants further asserted that at the time of the interdiction Nueci claimed the

-3-

vessel was registered in Venezuela, not Colombia. In support of that assertion, the defendants said that three of them had overheard Nueci telling the officer, who was part of the Coast Guard boarding team, that the vessel was Venezuelan. They added that FBI Special Agent Benjamin C. Walker, who was not part of that boarding team, stated in an affidavit in support of the complaint against the defendants that Nueci had claimed Venezuelan registry. That the Colombian authorities could neither confirm nor deny the vessel's registry in the end, the defendants argued, meant nothing since the United States authorities had requested a consent waiver from the wrong country. Defendants insisted that since no contact had been made with the Venezuelan government to verify that claim of registry, the United States never had jurisdiction over the vessel and, consequently, over them. The defendants claimed that, as a result, the United States had not established jurisdiction under the MDLEA over the vessel.

Confronted with the motion to dismiss for lack of jurisdiction less than two weeks before Nueci's trial was set to begin, the district judge pushed back the trial and referred the motion to a magistrate judge in mid-November 2007.[2] In its opposition to the defendants' motion to dismiss, the government rehashed what happened when the Coast Guard boarded the vessel:

---

[2]Although the defendants initially requested an evidentiary hearing, the parties subsequently agreed it was unnecessary.

-4-

that Nueci, who claimed to be the person in charge on the vessel, told an officer, who was part of the Coast Guard boarding team, that the vessel was Colombian. The government pointed to the "Certification For the Maritime Drug Law Enforcement Act Case Involving the Go-Fast Vessel (Without Nationality)" attached to its opposition, which recounts that the vessel had no "marking or indicia of nationality" and "was not displaying any registry numbers, a hailing port, or flying a national flag, and had no documentation or registry papers" at the time of the interdiction. The Certification showed that in accordance with the "Operational Procedures for Boarding and Search of Vessels Suspected of Illicit Traffic by Sea Related to Narcotics and Psychotropic Substances," the Coast Guard inquired via fax with the Colombian Navy to verify Nueci's claim of registry, but Colombia could neither confirm nor deny that claim. Consequently, the government noted, the United States determined the vessel was without nationality, or "stateless," in accordance with 46 U.S.C. § 70502(d)(1)(c) and subject to its jurisdiction. In response to the defendants' argument that the United States should have asked Venezuela, not Colombia, whether the vessel was registered there, the government asserted that any confusion about the vessel's registry was created by the defendants themselves. The government acknowledged Nueci had claimed at one point that the vessel had departed near the Venezuelan/Colombian border and that the drug trafficking venture

was organized in Venezuela (which the government suggests could have been why Agent Walker indicated that Nueci had claimed Venezuelan registry when he was not actually present at the interdiction).  But, the government argued, at the time of the interdiction the vessel flew no flag, had no markings, had no registration documentation, and defendants have offered no proof that the vessel was Venezuelan.  The government further argued that subject matter jurisdiction was not an element of the offense under the MDLEA and that defendants had no standing to challenge compliance with the treaty they claimed the United States violated in using gunfire to stop the vessel.

The government later filed a supplemental response to the defendants' motion to dismiss.  In that response, the government detailed the Coast Guard's more recent contact with Venezuelan authorities -- contact initiated to determine whether the vessel was indeed registered there as Nueci claimed.  The government attached to its motion the "Supplemental Certification For The Maritime Drug Law Enforcement Act Case Involving the Go-Fast Vessel (Without Nationality) Federal Drug Identification Number (FDIN) – 2007987278" issued on January 15, 2008.  The supplemental certification not only details the contact with the Colombian authorities concerning the vessel's registry (included in the original certification), but also addresses Nueci's claim of Venezuelan registry.  In accordance with Article 3 of the Agreement

Between the Government of the United States of America and the Government of the Republic of Venezuela to Suppress Illicit Traffic in Narcotic Drugs and Psychotropic Substances by Sea, the Coast Guard requested the Venezuelan Coast Guard to confirm or deny that Nueci's vessel interdicted on February 23, 2007 was registered in Venezuela. Venezuela could not say the vessel was registered there. The government asserted that regardless of Nueci's claim of registry, because neither Venezuela nor Colombia claimed the vessel, the vessel was "stateless" and the United States' exercise of jurisdiction was proper under the MDLEA.

The magistrate judge recommended the defendants' motion to dismiss be denied. Emphasizing that the list of mechanisms for establishing that a vessel is without nationality was not meant to be exhaustive and may be supplemented by looking to international law, the judge found the vessel would not have been authorized to fly the Venezuelan flag under international law since Venezuela was unable to trace the registry of the vessel. He therefore concluded Nueci's vessel was without nationality and subject to the United States' jurisdiction under "46 U.S.C. § 70502(d)(1) as supplemented by international law." The magistrate judge quickly disposed of the violation of international law claim, finding that there was no evidence the vessel was registered in Colombia and defendants had failed to explain how the treaty had been triggered without such registry. The magistrate judge further concluded that even if the

-7-

treaty applied in Nueci's case, Nueci had no standing to raise a claim for failure to comply with international law and that such failure does not divest a court of jurisdiction. See 46 U.S.C. § 70505. The district judge approved and adopted the report and recommendation in full in an order issued on April 9, 2008. After rescheduling the trial multiple times -- mostly due to the parties' motions to continue -- she set the trial date for September 17, 2008.

Days before trial, two co-defendants moved to change their pleas and the court terminated the September trial date and referred the motions to the magistrate judge. Two additional co-defendants moved to change their pleas around this time. The magistrate judge granted the co-defendants' motions and recommended the district judge accept their guilty pleas; the judge adopted those recommendations and subsequently sentenced each of those defendants.

In the thick of that activity, co-defendant Mitchell-Hunter moved to supplement the previous motion to dismiss. He argued that the commander's certifications -- regarding jurisdiction prepared by the Secretary of State's designees as proof that both Colombia and Venezuela did not object to the exercise of jurisdiction over the defendants' vessel -- were testimonial hearsay, and that under Crawford v. Washington, 541 U.S. 36 (2004), their use in the pretrial jurisdiction

-8-

determination, without an opportunity for cross-examination, constituted a violation of his Sixth Amendment right to confrontation. The district judge referred the matter to the magistrate judge who recommended denying the motion. The magistrate judge found inter alia that the right to confrontation was a trial right and, therefore, inapplicable to the pretrial jurisdiction determination. While Nueci had not moved to join the motion to dismiss, he moved to join Mitchell-Hunter's timely filed objections to the magistrate's report and recommendation. The district judge overruled those objections and agreed with the magistrate judge that the Confrontation Clause and Crawford did not apply before trial and found no other reason for dismissal under the MDLEA. Mitchell-Hunter changed his plea to guilty, which the district court accepted, and Nueci proceeded to trial, set for June 11, 2010.

The day before trial Nueci moved for an order declaring he had preserved his jurisdictional challenges.[3] He moved to preserve three issues: (1) "the constitutionality of allowing certificates as proof of a statement of no objection"; (2) "the constitutionality of having the jurisdictional issue decided by the Court and of not having the jury decide an element of the crime"; and (3) "the constitutionality of being tried under this statute

---

[3]Mitchell-Hunter pled guilty shortly after joining Nueci's motion to preserve certain jurisdictional challenges.

[the MDLEA] which criminalizes activities on the high seas with no requirement that the acts be directed towards the United States, and in particular, whether it is constitutional to exercise jurisdiction over a person in this manner." Though the district judge determined that the first issue had been previously raised, she could not find in the record when he had ever raised the latter two issues.[4] Understandably puzzled by a request to preserve arguments she was "not aware" Nueci had ever raised before, the district judge ordered him to "provide the specific information regarding the presentation of these two issues." Instead of complying fully with the order, Nueci clarified his challenge to the MDLEA was based on the statute's provision which "exempts the government from having to demonstrate a 'nexus' between the offense and the United States merely because the vessel . . . was deemed stateless." He argued that the statute's lack of a nexus requirement exceeds Congress's power to define and punish piracies and felonies on the high seas. As the district judge correctly concluded, however, Nueci merely gave an "explanation of the [motion's last two] constitutional issues, without referring the Court to the instances, if any, where each of them had been raised before." Nor could the district judge find any motions where those

_____

[4]While Nueci's motion regarding the preservation of his jurisdictional challenges cited his objections to the magistrate judge's supplemental report and recommendation, those objections said nothing about these particular constitutional issues.

specific issues had been raised. She therefore found the constitutionality of allowing certificates as proof of a statement of no objection as the only issue that had been preserved for appeal purposes and otherwise noted Nueci's motion to preserve the other issues.

On June 24, 2010, the jury found Nueci guilty on both counts in the indictment. The district court denied his motion for acquittal and his renewed two-sentence motion to dismiss the indictment for lack of jurisdiction. Nueci received 24 years imprisonment and 5 years supervised release. He moved for reconsideration of the sentence, arguing that the sentence was procedurally and substantively unreasonable given the disparity between his sentence and that of each of his co-defendants, among other reasons. The judge denied that motion too. Nueci's appeal followed.

## DISCUSSION

### A. Constitutional Challenge to the MDLEA

On appeal, Nueci argues the MDLEA is unconstitutional because it exceeds Congressional authority "[t]o define and punish Piracies and Felonies committed on the high Seas . . . ." ("the Piracies and Felonies Clause") under Article I, Section 8, Clause 10 of the Constitution.

As a threshold matter, Nueci says that de novo review applies to his constitutional challenge on appeal. We, however,

-11-

ordinarily review legal and constitutional claims de novo only when they are properly preserved.  United States v. Neto, 659 F.3d 194, 200 (1st Cir. 2011).  Nueci failed to preserve his constitutional challenge by failing to properly raise it in the district court.[5] Nueci's motion to dismiss for lack of jurisdiction before trial was not based on a challenge to Congress's authority under the Piracies and Felonies clause to punish drug trafficking under the MDLEA; rather it was based on Nueci's claim that he had said the vessel was of Venezuelan, not Colombian, registry and since the United States had not (at that time) contacted Venezuela to confirm it, the United States never had jurisdiction over the vessel and, consequently, over the defendants.

His motion the day before trial for an "order deeming jurisdictional issues preserved" listed as one of those issues: "the constitutionality of being tried under this statute [the MDLEA] which criminalizes activities on the high seas with no requirement that the acts be directed towards the United States, and in particular, whether it is constitutional to exercise jurisdiction over a person in this manner."  When ordered to indicate when Nueci had previously raised that argument, Nueci instead filed a further explanation of his argument that the MDLEA is an unconstitutional exercise of Congressional authority under

---

[5]The government erroneously asserts that de novo review applies as well.

the Piracies and Felonies Clause.  As the district judge aptly concluded, however, Nueci had never before raised that argument.

Ignoring his failure to properly preserve the constitutional challenge he now raises on appeal, Nueci seems to suggest that his constitutional claim goes to whether the district court had jurisdiction to sentence him for violating a law he says is unconstitutional; that is, if the MDLEA's lack of nexus requirement exceeds Congressional authority under the Piracies and Felonies Clause, the district court lacked jurisdiction over Nueci, or so the argument goes.  To the extent Nueci contends that a challenge to the constitutionality of the MDLEA inherently involves a challenge to subject matter jurisdiction and that subject matter jurisdiction can be raised at any time, regardless of whether it was raised below, we have previously rejected the assertion that a constitutional challenge to the MDLEA always "implicates the subject matter jurisdiction of the court."  United States v. Cardales-Luna, 632 F.3d 731, 737 (1st Cir. 2011).  "'If a challenge to the constitutionality of an underlying criminal statute always implicated subject-matter jurisdiction, then federal courts, having an obligation to address jurisdictional questions sua sponte, would have to assure themselves of a statute's validity as a threshold matter in any case.'"  Id. (quoting United States v. Baucum, 80 F.3d 539, 541 (D.C. Cir. 1996)).

Because he failed to raise his argument before the district court that Congress exceeded its authority under the Piracies and Felonies Clause in enacting the MDLEA without requiring a nexus between the conduct and the United States, the proper standard of review is plain error. See United States v. Acevedo-Maldonado, 696 F.3d 150, 156 (1st Cir. 2012) (plain error review applies where defendant failed to raise Confrontation Clause objection at trial). To establish plain error, Nueci must show "(1) error, (2) that is plain, and (3) that affects substantial rights." Johnson v. United States, 520 U.S. 461, 467 (1997) (internal quotation marks, alterations and citation omitted); United States v. Borrero-Acevedo, 533 F.3d 11, 15 (1st Cir. 2008). If all three elements are satisfied, "'an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Borrero-Acevedo, 533 F.3d at 15 (quoting Johnson, 520 U.S. at 467).

The MDLEA makes it unlawful for an individual to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board . . . a vessel of the United States or a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a)(1). That prohibition "applies even though the act is committed outside the territorial jurisdiction of the United States." Id. §

-14-

70503(b). A vessel "subject to the jurisdiction of the United States" includes "a vessel without nationality." Id. § 70502(c)(1)(A). "A vessel without nationality" in turn is defined, as relevant here, as "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." Id. § 70502(d)(1)(C).[6] The MDLEA does not require a nexus between a defendant's conduct and the United States. See id. § 70502(c). Focusing on that, Nueci contends the Piracies and Felonies Clause does not authorize Congress to punish drug trafficking on the high seas under the MDLEA without requiring a nexus between the unlawful conduct and the United States. We need not delve into the merits of Nueci's argument because even assuming his conviction under the MDLEA was error on that basis, the error was certainly not plain.

Looking first to the language of the Piracies and Felonies Clause, we note the Clause does not explicitly require a nexus between the unlawful conduct committed on the high seas and the United States be established before Congress can punish that conduct. See U.S. Const. art. I, § 8, cl. 10. In addition, on

_____

[6]Section 70502(e) defines "a claim of nationality or registry" as including only: "(1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas; (2) flying its nation's ensign or flag; or (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel."

more than one occasion, we have noted that Congress was "[i]nvoking its constitutional power '[t]o define and punish Piracies and Felonies committed on the high seas'" in making drug trafficking unlawful under the MDLEA. United States v. Matos-Luchi, 627 F.3d 1, 3 (1st Cir. 2010); Mitchell-Hunter, 663 F.3d at 49 n.3 ("The MDLEA is derived from Congress's power [under the Piracies and Felonies Clause]."). The Third and Fifth Circuits have similarly observed that Congress derived its authority to enact the MDLEA from the Piracies and Felonies Clause. United States v. Ledesma-Cuesta, 347 F.3d 527, 531-32 (3d Cir. 2003); United States v. Suerte, 291 F.3d 366, 376-77 (5th Cir. 2002); United States v. Martinez-Hidalgo, 993 F.2d 1052, 1056 (3d Cir. 1993).

While those cases did not examine in depth the scope of Congress' authority under the Piracies and Felonies Clause to enact the MDLEA, at least one circuit court to have addressed the specific challenge Nueci raises here -- that the Piracies and Felonies Clause does not authorize Congress to enact the MDLEA, which punishes conduct without a connection to the United States -- has rejected it. See, e.g., United States v. Estupinan, 453 F.3d 1336, 1338-39 (11th Cir. 2006) (holding Congress did not exceed its authority under the Piracies and Felonies Clause by enacting the MDLEA without requiring a jurisdictional nexus). Significantly, Nueci points us to no Supreme Court or circuit court

-16-

case, nor are we aware of any, holding otherwise.[7]  Given both our sister circuits' view that the MDLEA is a constitutional exercise of Congress' power under the Piracies and Felonies Clause and the absence of Supreme Court precedent addressing the scope of that power in this context, we cannot conclude that any jurisdictional error under the MDLEA related to Nueci's conviction -- and we do not suggest there was such error -- would constitute plain error.

### B. Confrontation Clause Challenge

Next, Nueci contends that even assuming the government could prosecute him under the MDLEA, the district court erred in

---

[7]To support his argument, Nueci mistakenly asserts that the early Supreme Court case United States v. Furlong, 18 U.S. 184 (1820), held that Congress does not have the power to punish felonies on the high seas that have no nexus to the United States. That was not the Court's holding, however. Furlong, a case about statutory interpretation, involved challenges to the convictions of several defendants under a piracy statute, the Act for the Punishment of certain Crimes against the United States, § 8, 1 Stat. 112 (1790) ("Act of 1790"). 18 U.S. at 185-93. The Court held that the defendants' piratical conduct was prohibited by the Act of 1790. Id. at 192-93. Even Furlong's dicta, stating the Act of 1790 could not "extend [to] the punishment of murder" on the high seas by a foreign crew member against another aboard a foreign vessel because piracy (the crime covered by the statute) is the "crime within the acknowledged reach of the punishing power of Congress," id. at 193-97, does not stand for the broad proposition that Congress cannot punish felonies such as drug trafficking on the high seas that bear no connection with the United States under the MDLEA.

Nueci's reliance on United States v. Smith, 18 U.S. 153 (1820), is equally misplaced. The issue in Smith was whether the Act of 1819's definition of piracy referencing the law of nations was within Congress' power to define and punish piracies. 18 U.S. at 158-60. Smith goes no further than holding that the Act of 1819's definition of piracy was a constitutional exercise of Congress' power to define piracies and that piracy is defined by the law of nations as "robbery upon the sea." Id. at 160-62.

-17-

admitting as evidence the commander's certifications to establish the vessel was subject to the jurisdiction of the United States. Specifically, Nueci argues that the certifications are testimonial in nature and by admitting them, his Sixth Amendment right to confrontation was violated. The Confrontation Clause of the Sixth Amendment to the Constitution provides that a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. While Nueci concedes that determinations of jurisdiction under the MDLEA are for judges to make, Nueci argues that the right to confrontation should extend to proceedings (before a judge) to determine jurisdiction under the MDLEA.

Our recent decision in Mitchell-Hunter, 663 F.3d at 50-53, forecloses that argument. In that case, Nueci's co-defendant, Mitchell-Hunter, made the very argument Nueci now advances on appeal: that it was a violation of the Sixth Amendment right to confrontation for the district court to use the certifications as evidence in the determination of jurisdiction under the MDLEA. In rejecting the argument, we explained that Crawford and Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the two cases upon which Nueci relies here, have not extended the reach of the Confrontation Clause beyond the context of trial. See Mitchell-Hunter, 663 F.3d at 52-53. We concluded, as we do here, that "[i]n this non-trial context, where evidence does not go to

-18-

guilt or innocence," the Confrontation Clause does not apply.  Id. at 53.[8]   Thus, Nueci's Confrontation Clause argument gets him nowhere.

## CONCLUSION

In the end, we affirm the district court, and Nueci's conviction stands.

---

[8]We made clear, however, that we were not going so far as to hold that the Confrontation Clause could never apply to pretrial determinations, just that it did not apply under these circumstances.  Id.