# United States Court of Appeals
## For the First Circuit

No. 15-2025

UNITED STATES OF AMERICA,

Appellee,

v.

JOHNNY SARMIENTO-PALACIOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Julia Pamela Heit for appellant.
John A. Mathews, II, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, were on brief, for appellee.

March 16, 2018

**HOWARD**, **Chief Judge**.  Johnny Sarmiento-Palacios pleaded guilty to two cocaine-related charges under the Maritime Drug Law Enforcement Act ("MDLEA").  On appeal, Sarmiento claims that (1) Congress exceeded its constitutional authority in promulgating the MDLEA; (2) Amendment 794 to the U.S. Sentencing Commission Guidelines ("the Guidelines") is retroactive, so he should be re-sentenced under the Sentencing Commission's amended guidance; or, in the alternative, (3) section 3B1.2 of the Sentencing Guidelines is void for vagueness.  Although we find Sarmiento's constitutional challenges to MDLEA and section 3B1.2 meritless, because we agree that Amendment 794 is retroactive, we vacate his sentence and remand for re-sentencing.

## I. Background

A. Facts and Procedural History

In August 2013, United States Coast Guard personnel stationed aboard a Dutch warship encountered a "go-fast" vessel[1] dead in the Caribbean Sea's international waters.  Because the vessel bore no indicia of nationality, the Coast Guard conducted a right-of-visit[2] approach.  The Coast Guard found Sarmiento and

---

[1] "This is a small boat, customized with additional engines and fuel tanks for added speed and range.  Experience tells us that such boats play a large role in the drug trade."  United States v. González, 311 F.3d 440, 444 n.3 (1st Cir. 2002).

[2] This "doctrine of international maritime common law . . . bestows a nation's warship with the authority to hail and board an unidentified vessel to ascertain its nationality."  United States

two codefendants -- as well as over 600 kilograms of cocaine in plain view -- on the vessel. The Coast Guard arrested the three men and seized the contraband.

In March 2015, Sarmiento entered a straight plea of guilty (that is, without a plea agreement) for (1) conspiracy to possess cocaine with the intent to distribute; and (2) aiding and abetting the same, all on a vessel subject to United States jurisdiction. See 46 U.S.C. §§ 70501 et seq.; 18 U.S.C. § 2. At his sentencing hearing in August 2015, Sarmiento argued for a two-level reduction because he was a "minor participant" in the offense and was "substantially less culpable than the average participant." See U.S.S.G. § 3B1.2(b) & cmt. n.3(A) (2014). Sarmiento emphasized that he had no criminal record prior to his arrest and that he was almost entirely blind. As such, he argued that he was both too inexperienced and too ill-suited to play more than a minor role in the charged crimes.

The district court rejected this argument, citing the "substantial amount of drugs" at issue. It sentenced Sarmiento to 135 months' imprisonment on each count -- at the bottom of the guidelines sentencing range -- to run concurrently. This timely appeal followed.

v. Matos-Luchi, 627 F.3d 1, 21 (1st Cir. 2010) (Lipez, J., dissenting) (citation omitted).

- 3 -

## II. Analysis

A. Sarmiento's MDLEA Challenge

Sarmiento briefly suggests that because Congress exceeded its constitutional authority under Article I when it promulgated the MDLEA, the United States lacked jurisdiction to prosecute him. See United States v. Cardales-Luna, 632 F.3d 731, 739-51 (1st Cir. 2011) (Torruella, J., dissenting). But even if this skeletal challenge has been properly presented to us, see United States v. Zannino, 895 F.3d 1, 17, it is unavailing.

At his change of plea hearing, Sarmiento admitted that he was apprehended on "a vessel without nationality," and he makes no effort to contest that admission on appeal. Further, Sarmiento concedes that the MDLEA is a valid exercise of Congress's Article I powers, at least in cases of "piracy, slave trading, and stateless vessels." See United States v. Matos-Luchi, 627 F.3d 1, 6 (1st Cir. 2010) ("[A] refusal to claim nationality renders [an] unflagged vessel stateless and so within federal jurisdiction."); see also Cardales-Luna, 632 F.3d at 751 (Torruella, J., dissenting). Because Sarmiento's "valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty,'" Class v. United States, No. 16-424, slip op. at 8 (U.S. Feb. 21, 2018) (quoting United States v. Broce, 488 U.S. 563, 573-74 (1989)), his challenge to the MDLEA must fail.

- 4 -

B. Guidelines Amendment 794

"Normally, the sentencing judge is to apply the guidelines version in effect at the time of sentencing." United States v. Crudup, 375 F.3d 5, 8 (1st Cir. 2004). The district court did just that when rejecting Sarmiento's argument for a reduction under U.S.S.G. § 3B1.2(b) (2014). But "a reviewing court may give effect to post-sentencing guideline amendments that clarify, without purporting substantive change, the pertinent guideline provision." Crudup, 375 F.3d at 8.

Here, about three months after Sarmiento's sentencing, the Sentencing Commission enacted Amendment 794, which altered section 3B1.2's commentary. See U.S.S.G. supp. to App. C, amend. 794, at 116-18 (2015) [hereinafter Amendment 794]. The amendment added language to the commentary notes that, among other things, explained that the mitigating-role reduction should apply to defendants who are "substantially less culpable than the average participant in the criminal activity" and listed five "non-exhaustive . . . factors" that courts "should consider" when determining whether a defendant qualifies for the reduction. Id. at 116 (emphasis added). Sarmiento argues that, under this new guidance, he would have received the two-level reduction that the sentencing court denied.

Amendment 794 must be "clarifying" in order to apply retroactively to Sarmiento -- that is, it must "change[] nothing

concerning the legal effect of the guidelines, but merely clarif[y] what the Commission deems the guidelines to have already meant." Crudup, 375 F.3d at 8 (quoting United States v. Smaw, 22 F.3d 330, 333 (D.C. Cir. 1994)). All of the other circuits that have considered this question have determined that Amendment 794 is clarifying, and therefore retroactive.[3] We agree.

An amendment's retroactivity is a "case-specific inquiry" because "a clear-cut demarcation rarely can be drawn between an amendment which is a mere clarification and one which effects a substantive change. . . . [O]ften we must weigh various factors and any conflicting indicia of the Commission's intent." Id. at 9. Our caselaw suggests four such factors: (1) whether the amendment is listed in U.S.S.G § 1B1.10; (2) the Commission's characterization of the amendment; (3) whether the amendment conflicts with our circuit precedent; and (4) whether the Commission takes sides in a circuit split -- and if so, how. Crudup, 375 F.3d at 9-10 (citing cases). We next examine these factors, keeping in mind that a "guideline amendment is either substantive or it is not," and that we are ultimately seeking the "significance of the amendment as a whole." United States v. Cabrera-Polo, 376 F.3d 29, 32 (1st Cir. 2004) (citation omitted).

_____

[3] See United States v. Quintero-Leyva, 823 F.3d 519, 523 (9th Cir. 2016); United States v. Carter, 662 F. App'x 342, 349 (6th Cir. 2016); United States v. Casas, 632 F. App'x 1003, 1005 (11th Cir. 2015) (per curiam).

### 1. Section 1B1.10(d)

Section 1B1.10(d) lists amendments that the Commission designates as retroactive. See Crudup, 375 F.3d at 9. The Commission did not include Amendment 794 in section 1B1.10(d)'s 2015 version (the first published after Amendment 794), which is "some evidence" that the Commission considered the amendment to be substantive, not clarifying. Id. But whether an amendment is listed in section 1B1.10(d) is not dispositive, as "courts may ascribe retroactive effect to an amendment not listed . . . if other evidence independently suggests that the Commission intended it as a clarification." Id. Such evidence exists here.

### 2. The Commission's characterization

Amendment 794 does not contain the words "clarify" or "clarification," and the government suggests that the Commission's failure to use these words shows that the Commission intended the amendment to be substantive. But our caselaw is not this formalistic. Rather than requiring the Commission to use any specific language when drafting guidelines amendments, the inquiry is more holistic: we care about whether the Commission "expressed [or] implied that [the amendment] is a clarification." Crudup, 375 F.3d at 9. Indeed, even if the Commission expressly designated Amendment 794 as either "clarifying" or "substantive" (which it did not), we would consider that label worthy of "considerable weight" but "not controlling." Id.

- 7 -

We agree with our sister circuits that Amendment 794's language "indicates that the Commission intended it to be a clarifying amendment." Quintero-Leyva, 823 F.3d at 523. The amendment's stated purpose is to "provide[] additional guidance to sentencing courts in determining whether a mitigating role adjustment applies" because the Commission determined that sentencing courts were applying section 3B1.2 "more sparingly than the Commission intended." Amendment 794 at 117. Besides providing a "non-exhaustive list of factors" for courts to consider when applying the mitigating-role reduction, id., the amendment eliminated prior commentary language that "may have had the unintended effect of discouraging courts from applying" the adjustment when appropriate. Id. at 118. By using this language, the Commission implied that Amendment 794 was a clarification of section 3B1.2, and the fact that the Commission never expressly used the word "clarify" does not change the amendment's overall intent.

### 3. Conflict with our circuit precedent

We have considered an amendment's conflict with our circuit precedent as a "factor . . . [that] would weigh in favor of characterizing [the amendment] as substantive." Crudup, 375 F.3d at 10. Amendment 794 clearly conflicts with our precedent. See Amendment 794 at 117 (discussing United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004)). But in Crudup, we recognized that

- 8 -

this interpretive principle was idiosyncratic to our circuit and applied it in a situation where "there [was] no other evidence that the Commission intended [for the amendment] to be a clarification." 375 F.3d at 10 n.3. Here, on the other hand, the evidence indicates the amendment's clarifying purpose, so we give this factor less weight.

### 4. Taking sides in a circuit split

When, as here, the Commission weighs in on a circuit split by "intimat[ing] that [some] circuits correctly apprehended the Commission's original intent underlying the pre-amendment guideline" and that circuits on the other side of the split "had misinterpreted that original intent," the amendment's likely purpose is clarification, not substantive change. Id. at 10.

Amendment 794 addressed a circuit split over section 3B1.2's pre-amendment guideline commentary, which allowed a sentencing court to apply the mitigating-role reduction when the defendant was "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, cmt. n.3(A) (2014). Some circuits evaluated the "average participant" by looking only at the other participants in the defendant's actual activity; other circuits, including ours, looked also to the "universe of persons participating in similar crimes" to define the average participant. Amendment 794 at 117 (describing the circuit split and citing cases). The amendment "generally adopt[ed]" the former

approach by revising the application note to read: "substantially less culpable than the average participant in the criminal activity." Id. (emphasis added).

This factor weighs in Sarmiento's favor because the Commission did not merely "assert[] that it follow[ed]" the winning circuits' holdings. Crudup, 375 F.3d at 10 (second alteration in original) (internal quotation marks omitted). Rather, the Commission determined that the "mitigating role [was] applied inconsistently and more sparingly than the Commission intended," so it promulgated the amendment to "promote consistency" in section 3B1.2's application. Amendment 794 at 117-18 (emphasis added). In other words, the Commission did not resolve the circuit split by creating "a new blanket rule . . . going beyond any circuit's reading of the previous rule," but instead issued a "clarification in favor of one view or the other." United States v. Godin, 522 F.3d 133, 135 (1st Cir. 2008) (describing such a resolution of a circuit split as clarifying).

Having considered these factors, and looking at the "significance of the amendment as a whole," Cabrera-Polo, 376 F.3d at 32 (quotation omitted), we agree with Sarmiento that Amendment 794 clarifies the Commission's original intent regarding section 3B1.2 and therefore applies retroactively.

The government argues in the alternative that Sarmiento would have been denied the minor-role reduction even in light of

Amendment 794, but we think it prudent to leave that determination in the hands of the able district court judge. Accordingly, a remand is justified to allow the sentencing court the opportunity to consider the "Commission's current policy position[,] . . . [which] may have some influence on the judge's ultimate discretionary choice of sentence." United States v. Ahrendt, 560 F.3d 69, 79 (1st Cir. 2009) (quoting Godin, 522 F.3d at 136).[4]

### III. Conclusion

Although Sarmiento's MDLEA contention is unavailing, we agree that because Amendment 794 is clarifying, not substantive, it is retroactively applicable. We therefore **vacate** the district court's sentence and **remand** for resentencing under the Commission's clarified guidance, as reflected in Amendment 794.

**-Concurring Opinion Follows-**

---

[4] Because we remand on the basis of Sarmiento's argument about the retroactivity of Amendment 794, we need not address his argument in the alternative that section 3B1.2 is void for vagueness. See United States v. Vidal-Reyes, 562 F.3d 43, 48 (1st Cir. 2009).

**TORRUELLA**, **Circuit Judge (concurring)**.  I write separately to highlight that I join the majority opinion's holding that the United States had jurisdiction to prosecute Sarmiento solely because Sarmiento has conceded that he was aboard "a vessel without nationality" when the Coast Guard apprehended him.  As I have previously explained, Congress exceeded its authority under Article I of the Constitution in attempting to extend criminal jurisdiction via the MDLEA to conduct outside of the United States lacking any nexus to the United States and over which the United States does not enjoy universal jurisdiction.  See United States v. Cardales-Luna, 632 F.3d 731, 739-42 (Torruella, J., dissenting) (1st Cir. 2011).  And while the United States (like all nations) does have universal jurisdiction over stateless vessels, I also reiterate that "the MDLEA's definition of 'statelessness' goes far beyond what is recognized by international customs or convention." Id. at 747 (citing Eugene Kontorovich, Beyond the Article I Horizon: Congress's Enumerated Powers and Universal Jurisdiction over Drug Crimes, 93 Minn. L. Rev. 1191, 1228 (2009)).

Thus, it is only by virtue of Sarmiento's concession that he was aboard a stateless vessel that I am able to join the panel in concluding that the United States has jurisdiction over crimes taking place aboard a vessel crewed by Dominican and Venezuelan nationals that was stopped by a Dutch warship in international waters in the middle of the Caribbean Sea.